# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| DIANE ONOFRIO GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV614-102 |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Diane Onofrio Graham seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our

judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC,[1] age, education, and work experience. An ALJ

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

Graham, who was 44 years old when her SSI claim was denied, alleges disability beginning April 2, 2007. Tr. 19, 156, 163, 176. She has a high school education (GED) and past relevant work experience as an administrative assistant and receptionist. Tr. 71, 208. After a hearing, the ALJ issued an unfavorable decision. Tr. 1-6, 19-26.

The ALJ found that Graham's chronic obstructive pulmonary disorder (COPD) constituted a severe impairment but did not meet or medically equal a Listing. Tr. 21-22. Based on the evidence of record, the ALJ found that she retained the RFC for light work, except that she must avoid work environments with pulmonary irritants such as fumes or gases. Tr. 22.

Plaintiff, he determined, could perform the requirements of work as an account clerk, telephone clerk, and order clerk, all sedentary work with

an SVP[2] of 2. Tr. 27-28.[3] Hence, Graham was not disabled. Tr. 28. She disagrees, arguing that the ALJ erred in his evaluation of her credibility and the medical evidence, including his RFC assessment and the hypothetical that he posed to the VE. Doc. 23.

A.  **Weighing Medical Evidence**

1.  **Dr. Andrew Cichelli**

Though a CT scan in September 2009 showed "clear" lungs, Tr. 609, a CT scan one year later revealed "extensive ground glass infiltrates bilaterally extending into the upper and lower lobes" and apparent pulmonary emboli in the left lower lobe. Tr. 607-08. Pulmonary function testing showed a pre-bronchodilator $FEV_1$ value[4] of 1.01 and FVC value[5] of 1.53, indicating moderately abnormal lung functioning. Tr. 511. A few months later, plaintiff told Dr. Cichelli she must sit down

---

[2] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

[3] The ALJ confirmed that the VE's testimony was consistent with the DOT. Tr. 25, 74.

[4] The $FEV_1$ measures the volume of air which can be forcibly exhaled from the lungs in the first second of exhalation with maximum effort. It is used for assessing airway obstruction, bronchoconstriction, or bronchodilation.

[5] The FVC measures the volume change from full inspiration to fill the lungs and maximal expiration to empty them.

4

and rest for 30 minutes after walking up stairs and wears $O_2$ at home, Tr. 605, but handwritten notes reflect no masses, effusions, or infiltrates and a normal cardiac silhouette in a lung X-ray, Tr. 606. *See also* Tr. 604 (lungs again clear a few months later). Pulmonary function testing showed a pre-bronchodilator $FEV_1$ value of 1.35 and FVC value of 1.85, and post-bronchodilator $FEV_1$ value of 1.48 and FVC value of 1.92, indicating mildly abnormal lung functioning, an overall improvement from prior testing. Tr. 531. A respiratory questionnaire completed by physician's assistant (PA) Stacy Basquin noted shortness of breath, weakness in legs, dyspnea on exertion, and the use of supplemental oxygen. Tr. 528.

Dr. Cichelli completed a Physical Capacities Evaluation form in September 2011. Tr. 550-52. He opined that plaintiff had COPD and was "$O_2$ dependent." Tr. 550. As a result, she would be unable to sit, stand, or walk for 6 hours in an 8-hour workday, would need a sit/stand option, would need to elevate her legs above her heart whenever she sat, and would need to take "multiple" 30-minute unscheduled breaks during the workday. *Id.* She would be unable to lift more than 5 pounds, reach in any direction, or push and pull arm controls. Tr. 551. Finally, she

5

would be unable to work more than 5 hours a day and would miss more than 5 days of work each month due to her condition. Tr. 551-52.

A chest X-ray in April 2012 demonstrated "clear" lungs and "no evidence of pneumothorax or pleural effusion." Tr. 784; *see also* Tr. 798 (lateral chest X-ray showing "no acute lung findings"). A few months later, Graham reported shortness of breath, but on examination her respiratory effort was "unremarkable," respiratory rate and pattern were "normal," her lungs were "clear to auscultation bilaterally," and "no crackles or wheezing [were] noted." Tr. 602. Handwritten notes also reflect a clear lung X-ray report, with no masses or infiltrates observed and a normal cardiac silhouette. Tr. 601. Dr. Cichelli saw plaintiff for cracked ribs after a fight a month later, and again noted her respiratory effort was "unremarkable," respiratory rate and pattern were "normal," and her lungs were 'clear to auscultation bilaterally." Tr. 600; *see also* Tr. 733 (paraseptal emphysema noted on cervical spine CT scan).

Finally, in December 2012, Graham was observed to continue to smoke a pack of cigarettes a day despite her COPD and a significant cough arising from acute bronchitis. Tr. 636-43 (also denying alcohol use), 648-56; *see also* Tr. 703, 708 (smokes a pack a day), 718 (admitting to

6

alcohol use). A chest X-ray revealed "hyperinflated" lungs due to her bronchitis, with a potential "small infiltrate" at the right heart border. Tr. 683.

Despite finding her COPD severe at Step 2, the ALJ did not find that it met or equaled a Listing at Step 3. Tr. 21-22 (determining Graham did not meet Listing 3.02 based on her FEV1 value of 1.35 and FVC of 1.85, which were not low enough to meet the Listing[6]); 20 C.F.R., Part 404, Subp. P, App. 1, § 3.02A. The ALJ noted that while plaintiff's pulmonary testing had improved dramatically between the first and second tests, the scores remained low enough to indicate "there is still some obstruction in her breathing." Tr. 23. But it was not significant, because she had "recently presented with no acute cardiopulmonary findings" and her "respiratory rate, pattern, and effort were normal and unremarkable to physicians." Tr. 23; *see also* Tr. 600-02, 784. 798.

Based on the objective evidence and clinical findings, the ALJ concluded that "there is no evidence to suggest that [Graham] has chronic

---

[6] Once the COPD is established by appropriate clinical and laboratory findings, the severity of the respiratory impairment must be assessed by means of pulmonary function testing. 20 CFR, Part 404, Subp. P, App. I, § 3.00. The regulations further require that the highest level of $FEV_1$ and FVC be used in determining the severity of a pulmonary impairment and whether it meets a respiratory Listing. *Id.*, § 3.00E.

7

impairment of gas exchange due to a clinically documented pulmonary disorder that would corroborate Dr. Cichelli's extremely limited residual functional capacity." Tr. 24. Plaintiff insists the ALJ erred by failing to assign Dr. Cichelli's opinion controlling weight. Doc. 23.

"As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.'" *Black v. Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015) (quoting *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016)).

"The opinion of a treating physician, such as Dr. [Cichelli], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted).

The ALJ did not err in assigning "little weight" to Dr. Cichelli's opinion that plaintiff suffered from extreme functional limitations. The objective evidence of Graham's pulmonary functioning, including improving $FEV_1$ and FVC values, imaging studies of "clear lungs" with little-to-no-evidence of masses or infiltrates and a normal cardiac silhouette, and repeated clinical observations of "unremarkable," respiratory effort, "normal" respiratory rate and pattern, and lungs "clear to auscultation bilaterally," simply does not support Dr. Cichelli's opinion that plaintiff is so limited in functioning. Tr. 24; *see* Tr. 511, 531, 600, 601, 602, 604, 606, 784, 798. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (where the evidence supports a contrary conclusion, the Commissioner properly discredits the physician's opinion).

Graham does not cite to a single treating note to buttress Dr. Cichelli's opinion on her functional limitations, contending instead that his "longitudinal picture" of her health and treating history should be given weight simply because his is "the only examining opinion of record." Doc. 23 at 9. This contention is without merit. After properly

discrediting Dr. Cichelli, the ALJ permissibly turned to non-examining reviewer Dr. Abraham Oyewo. *See Jarret v. Comm'r of Soc. Sec.*, 422 Fed. App'x 869, 873-74 (11th Cir. 2011) (ALJ did not err in giving significant weight to agency reviewing physicians because good cause existed to discredit treating physician). Dr. Oyewo reviewed the record and determined plaintiff could perform light work with environmental restrictions to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Tr. 24; *see* Tr. 541-48. The ALJ properly relied on his opinion to determine that Graham was capable of working with these limitations. 20 C.F.R. § 416.97(e)(2)(i); SSR [7] 96-6p (state agency consultants are highly qualified experts whose opinions may be entitled to great weight when buttressed by the evidence).

Finally, plaintiff's contention that the ALJ erred by not discussing PA Basquin's December 2010 respiratory questionnaire is without merit. PA's are not acceptable medical sources, *see* 20 C.F.R. § 416.913(a)(1); *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x 830, 833-34 (11th Cir. 2011), and are weighed the same as any other lay witness, *see* 20 C.F.R.

---

[7] Social Security Rulings ("SSR") are final opinions and statements of policy by the Commissioner of Social Security, binding on all components of the Social Security Administration. 20 C.F.R. § 422.406(b)(1).

10

§ 416.913(d). Even then, it is unclear what statements Graham contends the ALJ should have explicitly considered. PA Basquin only noted Graham's diagnoses, her height, weight, and blood pressure, and her subjective reports of shortness of breath and use of supplemental oxygen. *See* Tr. 528. These are not opinions on plaintiff's functional limitations or ability to work that would impact the RFC assessment or ultimate disability finding, and the ALJ was under no duty to consider them, particularly given other, more recent clinical findings and objective evidence in the record. *See* Tr. 511, 531, 600-02, 604, 606, 784, 798.

In sum, the ALJ did not err in his consideration of the medical opinion evidence.

### B. RFC Assessment

The ALJ concluded that Graham retained the RFC to perform light work with significant environmental limitations on her exposure to pulmonary irritants. Tr. 22. As discussed above, her contention that the ALJ erred by not including Dr. Cichelli's opined limitations is without merit. But plaintiff also argues that the ALJ failed to accommodate her dependence on supplemental oxygen in the RFC assessment. Doc. 23. This argument also fails.

11

The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the *entire* record, 20 C.F.R. § 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). Here, the ALJ adequately accommodated Graham's $O_2$ use in his RFC assessment and hypothetical to the VE.

Graham offers only her own discredited testimony in support of her total dependence on supplemental oxygen, doc. 23 at 10; this is because no medical source opined that she is bound to her supplemental oxygen tank 24-hours a day (not even Dr. Cichelli). Absent evidence of such a limitation in the record, the ALJ was not required to create one in his RFC assessment or hypothetical to the VE. *Smith v. Comm'r of Soc. Sec.*, 422 Fed. App'x 855, 857 (11th Cir.2011).

Even had there been such evidence, however, any failure to include a supplemental $O_2$ dependence restriction was harmless because the VE specifically testified that Graham could do her past relevant work even if she were oxygen dependent. Tr. 72-73 (an oxygen-dependent individual only able to stand or walk for 2 hours in an 8-hour day would be able to

12

perform her past relevant work). *See also* Tr. 75 (responding to hypothetical posed by counsel that most employers would accommodate an oxygen-dependent individual). The ALJ properly considered the combined effects of Graham's impairments on her ability to work.

### B. Graham's Credibility

The ALJ discredited plaintiff's testimony that she is on supplemental $O_2$ "24 hours a day" and is extremely limited in her daily activities by her COPD based on her continued smoking, her alcohol abuse, and the objective medical evidence. Tr. 23. Plaintiff argues the ALJ failed to articulate sufficiently explicit and adequate reasons to discredit her subjective testimony. Doc. 23 at 11 (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The record, however, is replete with physicians' notes that Graham continued to smoke despite medical advice to stop, *see* Tr. 590, 602, 636, 639, 640, 703, 809, 816, as well as inconsistencies between her sworn testimony that she only smoked 6-8 cigarettes a day, Tr. 55, and her reports to medical sources that she continued to smoke a pack a day. Tr. 640, 703, 708. This was an appropriate basis on which to discount her credibility as to the severity of her pulmonary impairment. *See Holley v.*

13

*Chater*, 931 F. Supp. 841, 847-48 (S.D. Fla. 1996) ("the continued use of cigarettes by plaintiff suggests that h[er] pulmonary condition is not as severe has [s]he alleges and further supports the ALJ's decision to accord [Graham]'s subjective complaints diminished weight"). *See also Sias v. Sec'y of Health and Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) ("The Social Security Act did not repeal the principle of individual responsibility. . . . If the claimant in this case chooses to drive himself to an early grave, that is his privilege -- but if he is not truly disabled, he had no right to require those who pay social security taxes to help underwrite the cost of his ride").[8] *Contra Seals v. Barnhart*, 308 F. Supp. 2d 1241 (N.D. Ala. 2004) (noting addictive nature of smoking).

The ALJ also determined that the objective medical evidence and lack of clinical findings undermine plaintiff's allegations of disability. Tr. 23. In the months immediately preceding her hearing before the ALJ, Graham had a clear lung X-ray report. Her respiratory effort was repeatedly observed to be "unremarkable," her respiratory rate and pattern "normal," and her lungs were "clear to auscultation bilaterally."

---

[8] Plaintiff cites no binding precedent to support her argument that the "addictive nature of cigarettes" makes a failure to stop smoking despite medical advice "an unreliable basis on which to rest a credibility determination." Doc. 23 (quoting *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1250 (N.D. Ala. 2004)).

Tr. 600-02. These findings are simply inconsistent with Graham's allegations of extremely limited daily activities and 24-hour-a-day reliance on oxygen. The ALJ's credibility determination was supported by substantial evidence.[9]

C. **Past Relevant Work**

Plaintiff argues that the ALJ improperly relied upon the VE's testimony given in response to incomplete hypotheticals. Doc. 23 at 13. As discussed above, however, the ALJ properly formulated a physical RFC based on the medical evidence of record and presented a hypothetical to the VE that accommodated all of Graham's functional limitations that were supported by the record. Because the ALJ presented a valid hypothetical to the VE, and because the VE testified that plaintiff could perform her past relevant work (even with a restriction to rely on

---

[9] Plaintiff's final Hail Mary contention -- that the ALJ's failure to evaluate her pet ownership on her physical RFC, doc. 23 at 12 -- similarly fails. The ALJ did not need to "specifically refer to every piece of evidence," where the decision reflects that he considered Graham's condition "as a whole." *Robinson v. Comm'r of Soc. Sec.*, 2016 WL 2610628 at *2 (11th Cir. May 6, 2016) ("The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . [us] to conclude that the ALJ considered [the] medical condition as a whole") (quoting *Dyer*, 395 F.3d at 1210). Though he didn't need to discuss it, the Court notes that plaintiff's admitted ability to take care of the needs of her pet dog without help only further buttresses the ALJ's credibility finding. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 880 (11th Cir. 2014) (demonstrated ability to care for pets can support negative credibility finding).

supplemental $O_2$, *see* Tr. 72-73, 75), the ALJ properly found she was capable of performing her past relevant work and therefore was not disabled. *See* 20 C.F.R. § 416.960(b); *Simpson v. Comm'r of Soc. Sec.*, 423 Fed. App'x 882, 884 (11th Cir. 2011).

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED**, this  4th  day of October, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA